## SLOAN v. WOLF CO.

### (Circuit Court of Appeals, Eighth Circuit.  July 9, 1903.)

#### No. 1,348.

**1. CONTRACT—PROPOSAL—REJECTED BY COUNTER OFFER—ACCEPTANCE OF LATTER—EFFECT.**

An offer of a modification or condition in answer to a proposal for a contract is a rejection of the original proposition, and an acceptance by the first proponent of the counter offer of his respondent concludes the agreement, and makes the modification or condition a part of it.

**2. SALE—GUARANTY—DAMAGES FOR BREACH—OPTION OF PURCHASER.**

The purchaser of machinery or personal property under a broken guaranty has a choice of remedies. He may retain the property and recover the difference between its actual and its contract value, or he may return the property and recover the purchase price.

**3. SAME—LIMITATION OF REMEDY BY STIPULATION.**

But where the contract of guaranty expressly provided that if any part of the property sold was found defective the vendors would upon receipt of notice replace that part on board the cars at their factory, *held*, this stipulation limited the liability of the vendors for furnishing a leaky and worthless turbine wheel to placing a first-class wheel in place of the worthless one on board the cars at their factory, and it imposed upon the purchaser the duty of notifying the vendors of the defect as soon as it was discovered.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Nebraska.

H. C. Brome (A. H. Burnett, on the brief), for plaintiff in error.

John C. Cowin, for defendant in error.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

SANBORN, Circuit Judge.  This was an action by the Wolf Company for the purchase price of the machinery for a mill which they sold and delivered to Thomas L. Sloan, the defendant.  Sloan denied that the plaintiffs had performed their contract, and pleaded counterclaims (1) for moneys paid at the request of the plaintiffs for labor and materials used in reconstructing the forebay, penstock, and race; (2) for a breach of plaintiffs' guaranty to furnish a first-class turbine wheel;

(3) for a breach of their guaranty to furnish proper elevator trunking and spouting; and (4) for a breach of their guaranty to furnish two No. 1 Imperial scourers.

The contract was that the defendant would construct the forebay, penstock, race, and the building for the mill, but that the plaintiffs would furnish working drawings for the construction of these parts, and that they would furnish the turbine wheel, the trunking, spouting, scourers, and other machinery. The parties proceeded in the performance of their agreement until the mill was completed. But when it was started it failed to develop sufficient power to do any grinding, and in order to make it operative it became necessary to take out, lower, and rebuild the penstock at an expense of several hundred dollars. Thereupon a controversy arose between the parties over the question which of them should bear the expense of reconstruction, and after one Stevens, who had been the agent of the plaintiffs to take the original order for the machinery, had made the proposition set forth in the telegram recited below, and had directed certain employés to proceed to take out and rebuild the penstock, the following telegrams passed between the parties:

"The Wolf Co., Chambersburg, Pa.

"Have following proposals from your agent.

" 'We propose to adjust your water-wheel, and remodel wheel pit and tail-race to conform to Ponsar's plans which we guarantee to give ample power under 8 foot head to operate your mill to full capacity. We guarantee our wheel to be perfect and not to leak. We propose to do this at our own expense and should the fault prove to be in us we will cheerfully acknowledge and pay for same.                    The Wolf Co.,

" 'Per P. A. C. Stevens, Agt.'

"Have not accepted. Men at work at your direction and responsibility. Have protested against work without guarantee for cost and damages.

"Thomas L. Sloan."

"Febr. 21, 1900.

"Dated Chambersburg, Penn 21.

"To Thos. L. Sloan, Pender.

"Don't do anything till hear further from us are waiting Stevens letter.

"The Wolf Co."

"Febr. 23, 1900.

"Dated Chambersburg Penn 23.

"To Thos. L. Sloan, Pender, Nebr.

"Stevens letter received order millwrights proceed with work all satisfactory our responsibility.                    The Wolf Co."

After the receipt of the last telegram the defendant permitted the employés to proceed with the work of reconstruction, paid for the labor and materials used for that purpose at the request of the plaintiffs, and charged the moneys thus expended to them. The defendant seeks the recovery of these moneys by his first counterclaim.

It is assigned as error that the court below instructed the jury, in the light of these facts, that the Wolf Company did not by the above writings become guarantors of the expense of lowering and rebuilding the penstock, but that the legal effect of these telegrams was to leave the company liable for the expenses of lowering the penstock in case they were to blame for the faulty construction of it, and in that case only. If this was the only effect of the writings under considera-

tion, then they had no effect; for the plaintiffs were liable, in the absence of the telegrams, for all the expenses of the reconstruction, if the mistake in the original construction was attributable to their negligence or to their fault. This was the proposition which Stevens made to the defendant, and which the defendant rejected. His answer to it was that he had not accepted it, that the men were at work at the plaintiffs' direction on their responsibility, and that he protested against the work without a guaranty of the costs and damages. This was a clear rejection of the original proposition, and an offer to accept it on the condition that the plaintiffs would be responsible for the cost and damages. The plaintiffs accepted the proposal with the tendered condition or modification, and the contract was complete. They replied: "Order millwrights proceed with work all satisfactory our responsibility." Until that telegram was received the minds of the parties had not met upon any agreement. The minds of the plaintiffs insisted that they should be responsible for the cost of reconstruction only in case the fault in the original building was theirs. The mind of the defendant rested upon the proposition that the plaintiffs should be responsible for the cost and damages of the reconstruction in any event, whether the mistake was the fault of the plaintiffs or of the defendant. Their minds first met on the defendant's proposition. They met the moment the plaintiffs telegraphed that all was satisfactory, and that the millwrights should proceed upon their responsibility. The Circuit Court was in error in its construction of the contract made by these writings. It should have charged the jury that the plaintiffs promised to pay the cost of the reconstruction of the penstock and its connections by their telegram of February 23, 1900, when they directed the work to proceed upon their responsibility.

An offer of a modification or condition in answer to a proposal for a contract is a rejection of the proposal, and an acceptance by the original proponent of the offer of his respondent concludes the agreement, and makes the modification or condition a part of it.

Another specification of error is that the court instructed the jury that the defendant was entitled to no allowance or credit on account of the defects, if any, in the wheel and scourers. This instruction was given on the theory that the defendant gave no notice of any defects in these parts of the machinery until after he had accepted and used them for two or three years. If no such notice was given, it is not perceived how this specification of error can be sustained. It would not be profitable to review the evidence in the record to learn whether or not there was any evidence of such a notice which should have been submitted to the jury, because the case must be tried again in any event, and upon the second trial it is probable that the testimony will differ in some respects from that now before us. It will be more conducive to a correct result at the coming trial to briefly express our views of the relations and rights of the parties with reference to the subjects of these counterclaims under the contract between them. That contract provided that the defendant should have no right to operate or run the mill or machinery until a settlement was made by him according to its terms, and that his operation of it without the written consent of the plaintiffs should be considered a full acceptance of the mill and its

machinery. It also contained this clause: "The company guaranties that the entire equipment of machinery herein described shall be first class, and not likely to get out of order, and to be in all respects as herein specified. Should any part be found defective upon starting, the company agrees to replace the same upon receipt of notice on board cars at factory." These provisions of the contract clearly evidence the intention of the parties to make an immediate notice of defects at the time that the machinery was ready to start a condition precedent to the defendant's right to recover on the guaranty. They also disclose the intention of the parties to fix and limit the damages resulting from any defective part of the machinery to the delivery by the vendor of a first-class corresponding part on board the cars at the factory. It may be that the remedy of the defendant for a latent defect or for a slight one which could be remedied at a small proportion of the expense of replacing the defective part was not restricted by the agreement to his right to have the defective part replaced on board the cars at the factory. But that is not the nature of the imperfections that are the subjects of the counterclaims in this action. Take, for example, the turbine wheel which is the subject of the second counterclaim. The defendant pleaded and he testified that when he received this wheel it was and has ever since been worthless, and that the amount he was entitled to recover on account of the defects in it was the entire contract price of the wheel. It is plain that under this contract the only liability of the plaintiffs for such a plain and complete failure as this was their liability to replace the worthless wheel with a first class one on board the cars at their factory. And it is not less clear that a speedy notice by the purchaser of such a patent and fatal defect in the motive power of the mill was a condition precedent under this contract to a recovery for such defects in the wheel.

In the absence of stipulation to the contrary, the purchaser of machinery or personal property under a broken guaranty has a choice of remedies. He may retain the property and recover the difference between the actual value of the article as delivered and its value as agreed to be delivered, or he may return the property and recover the purchase price. Whalen v. Gordon, 37 C. C. A. 70, 78, 95 Fed. 305, 312; Dorr v. Fisher, 1 Cush. 271, 273, 274; Rogers v. Hanson, 35 Iowa, 283, 287; Hyatt v. Boyle, 5 Gill & J. 110, 121, 25 Am. Dec. 276. But in the case in hand the parties to the contract expressly agreed, as they had the lawful right to do, to the extent and character of the damages which the defendant should recover for a defect in any part of the machinery. They stipulated that he (Sloan) should receive a first class piece of machinery on board the cars at the factory of the plaintiffs in the place of the defective piece which had been delivered. These provisions of the agreement are too plain to be evaded or misunderstood. They contemplated and required a notice by the defendant at the starting of the machinery of so patent a defect as the utter worthlessness of the turbine wheel, and permitted the plaintiffs to relieve themselves from all damages on that account by replacing the defective part of the machinery with a first-class turbine wheel of the character described in the contract on board the cars at their factory in Pennsylvania. It is unnecessary to extend this opinion, and a

rational application of the views which have already been expressed to the facts which may be developed at the coming trial will doubtless lead to a just and correct result. The judgment below is reversed, and the case is remanded to the court below, with instructions to grant a new trial.