Southern Engine & Boiler Works *v.* Globe Cooperage & Lumber Company.

Opinion delivered April 3, 1911.

1. Sales—effect of warranty.—A stipulation in a written contract for the sale of machinery that if anything should be found broken or defective in the machinery the buyer should give notice to the seller

so that it might correct same was in effect a warranty that the ma-chinery was in perfect condition at the time it was sold and delivered, but the warranty related only to the condition of the property at the time of the sale. (Page 485.)

2. SAME—WHEN TITLE PASSED—DELIVERY TO CARRIER.—Where, by the terms of a contract of sale, the property was to be delivered to a common carrier to be transported to the buyer, the title passed upon such delivery. (Page 486.)

3. SAME—NOTICE OF DEFECTS—WAIVER.—The failure of a seller of ma-chinery to replace, as required by the contract, small parts thereof broken in transit, is not a waiver of the condition imposed on the buyer to give notice within a specified time of structural defects in the machinery. (Page 487.)

4. SAME—WARRANTY—WHEN BROKEN.—Where a contract of warranty in the sale of machinery provides that notice of defects must be given within a specified time, the condition is imperative, and the buyer will not be entitled to resist payment of the purchase money on account of any imperfection, of which he did not give notice, though the buyer did not discover the cause of the defect until the specified time had expired. (Page 487.)

Appeal from Cleburne Circuit Court; *Brice B. Hudgins,* Judge; reversed. .

*E. H. Mathes,* for appellant.

1. No notice of any defects was given for nearly five months after the machinery was set up and used, hence there was no liability under the contract. 75 Ark. 206; 2 Mech. on Sales, § § 1380, 1384; 6 N. W. Rep. 46; 44 Iowa 237; 5 Neb. 482; 79 Mo. 264; 76 Ark. 74; 78 *Id.* 177.

2. No recovery can be had for the broken parts, because the contract was for delivery on board cars at Jackson, Tenn. Nor because the mill was idle, nor for money paid hands in attempting to run the mill after discovering it was not as repre-sented. 2 Suth. on Dam. (2 ed.) § 705; 72 Ark. 275.

*Bratton & Fraser,* for appellee.

1. The only question presented is whether the law justifies or warrants a judgment upon the facts in the record. 33 Ark. 651. ·

2. Appellee *at once* notified appellant of the defects and parts broken and short. Under the contract appellant agreed to "correct" same, that is, make good any shortage, defects or over-charge.

3. One is not held to a strict compliance with a contract or performance of conditions precedent where a sufficient excuse is given for the failure to perform. 35 Cyc. 445; 130 Ill. App. 75. The defect could not be discovered. The cases cited do not apply, but this case is governed by 92 Ark. 310; 30 A. & E. Enc. Law (2 ed.) 217. Reasonable expenses incurred in consequence of defects in machinery are recoverable. 25 Ark. 164; 21 *Id.* 349.

Frauenthal, J. This was an action of replevin instituted by appellant for the recovery of certain sawmill machinery which it sold to appellee. The sale was made in pursuance of a written contract under which the appellee executed notes for the purchase money of the property, the last of which was past due and had not been paid. In the contract and notes it was stipulated that the title to the property remained in the appellant until the payment of the purchase money, with the immediate right of possession upon default in the payment thereof.

The appellee admitted the execution of the contract and notes and that the last note had not been paid. In its answer it alleged by way of counterclaim that it had been damaged by reason of a breach of an express warranty of the property contained in said contract in a sum far in excess of the amount of said note, and that on this account there was nothing due thereon.

The cause was, by consent, tried by the court, who found that the appellee was entitled "to damages growing out of the contract of sale of the machinery in question in an amount in excess of the amount found due as a balance of the purchase money for said machinery." It thereupon rendered judgment in favor of the appellee for said property.

The appellee bases its right to plead the above counterclaim for damages against a recovery in this action of replevin upon the principles announced in the following opinions rendered by this court: *Ames Iron Works* v. *Rea,* 56 Ark. 450; *Johnson* v. *St. Louis Butchers' Supply Co.,* 60 Ark. 387; *Ramsey* v. *Capshaw,* 71 Ark. 408.

Appellant does not contend that the appellee was not entitled to plead a recovery on said counterclaim in the event there was any legal evidence adduced upon the trial of the case upon which such damages can be based. On the contrary, it was expressly

agreed by appellant in the lower court that such counterclaim might be pleaded and a recovery thereon had in such event.

The appellant was located at Jackson, Tennessee, and the appellee conducted its sawmill business at Edgemont, Arkansas. In the written contract of sale it was provided that the property should be delivered by appellant to appellee free on board the cars of a common carrier at Jackson, Tennessee. Amongst other terms in said contract, it was expressly agreed that, if anything was found short, broken, defective or not as specified, notice thereof should be given in writing to appellant within ten days after the machinery was received by it that appellant might correct the same. The contract also contained the following express warranty :

"Warranty: The Southern Engine & Boiler Works guarantees said machinery and property shall be as represented herein, and of good material and workmanship—to do good work when properly set down and operated. And the parties of the second part agree to test the same within thirty days after received, and if, upon trial, said machinery should not prove as herein represented, the parties of the second part expressly agree to give immediate written notice to the said Southern Engine & Boiler Works, of Jackson, Tennessee, and to allow the company a reasonable length of time, after having received said written notice, to send a man to adjust said machinery, the purchaser agreeing at the time to give full co-operation, together with the necessary help. The use of said machinery, without giving the written notice as herein provided, shall be deemed and construed as an acceptance of and conclusive evidence that said property is as herein represented."

It appears from the undisputed testimony that the appellant, in December, 1908, in pursuance of said contract of sale, delivered said machinery to a common carrier at Jackson, Tennessee, duly consigned to the appellee at Edgemont, Arkansas, and that same was received by the appellee at said latter place in due course during the same month, and it paid the freight thereon. On January 4, 1909, and presumably within ten days after receiving the machinery, the appellee notified appellant by letter that some small items thereof were either broken or missing, amounting in the aggregate to $7.25, but we think the undisputed testi-

mony shows that such portions of the machinery were either damaged or lost while the property was in transit. In reply to this letter from appellee, the appellant wrote that it would send said items on receipt of the price thereof, and requested the appellee to make out its claim therefor against the railroad company and send to appellant and it would 'collect same for it. It also indicated in its letters that, in the event appellee would make a verified claim against the railroad company therefor, it would, on receipt of such claim, send the parts desired without payment. The appellee made no reply to this letter.

The testimony on the part of the appellee tended further to prove that immediately upon receipt of the machinery it set up and began operating the same, and that it would not do good work, but on the contrary it could not be successfully operated on account of a defect in the mandrel. It appears that the appellee attempted to operate the machinery continuously for a period of from four and one-half to five months after it was first set up before it discovered the particular defect in the machinery which caused it to fail to do proper work; but the testimony upon its behalf shows that, whatever may have been the cause, the machinery would not do good work immediately upon its being set up, and continued in this condition for four and one-half to five months thereafter. Under the undisputed testimony, however, the appellee never did give any notice, either verbal or written, to the appellant that there was any defect in the machinery or that it could not be properly operated. The testimony on the part of appellee tended to prove that by reason of the fault either of the machinery or the manner in which it was set down, lumber could not be properly sawed, and on this account it was operated during the above period at a considerable loss instead of a profit, and its manager testified that it was damaged thereby in the sum of $1,000. The defect which the appellee claims was in the mandrel consisted of a kink or crook therein, and when this was discovered a new mandrel was purchased by it at a cost of $49. The remainder of the damages, it is claimed, consisted in the loss of time and profits.

It is urged by the appellee that the appellant breached the warranties contained in said written contract of sale when it failed to send to it the broken parts referred to in the above letter,

and that appellee was thereby entitled to recover in damags the cost of said items.   But we do not think that this contention is correct.   It was provided by the contract that, if anything was found broken or defective in the machinery, the appellee should give notice to the appellant so that it might correct same.   This, we think, was in effect a warranty upon the part of appellant that the machinery at the time it was sold and delivered was in perfect condition.   But this warranty related only to the condition of the property at the time of the sale, and did not cover any future defects which were not then in existence.   According to the terms of the contract, it was provided that the property should be delivered by the appellant to appellee to a common carrier at Jackson, Tennessee; and when the same was thus delivered by it, the title thereto at once vested in the appellee.   *State* v. *Carl,* 43 Ark. 359; *Burton* v. *Baird,* 44 Ark. 556; *Hope Lumber Co.* v. *Foster & Logan Hardware Co.,* 53 Ark. 196; *Harper* v. *State,* 91 Ark. 422.

Under the undisputed testimony, the items of property mentioned in said letter of January 4th were broken or lost while the same were in transit, and therefore did not exist at the time same was delivered by appellant to the common carrier.   The damage to the property in transit was the damage of appellee, and it alone had the right to recover such damage from the common carrier.   The above agreement, warranting the property against being broken or being short, only related to the time when the delivery was made to the common carrier, and did not cover the period while the property was in transit and the damage done by another.   35 Cyc. 414.

It follows that the appellant did not breach said portion of the contract when it wrote to the appellee that it would furnish the items on receipt of the price thereof.   But, in addition to this, it appears from the testimony that the appellant agreed to furnish these items without payment in event the appellee would make out its claim therefor against the carrier and forward same to appellant.   This, we think, was a full compliance upon appellant's part with said portion of the contract.

It is urged by appellee that by reason of the defect in the mandrel it was greatly damaged, and it was entitled to recover said damages by reason of the above express warranty in said contract of sale.   A warranty itself is not essential to a contract

of sale. It is an agreement that is only collateral thereto. Where
the contract is reduced to writing, and has therein incorporated
the express warranty, it contains everything of a contractual char-
acter which the parties finally intended should be binding. A
contract of warranty may be continuing, or it may be limited. It
may be conditioned, in the case of sale of machinery, upon a test
or trial thereof to be made by the purchaser within a specified
time, and in such case there will be no breach unless the condition
is fulfilled. The agreement of warranty, when in writing, like
any other written contract, is controlled by the language thereof.
In the cases of contracts for the sale and warranty of machinery,
it is common to provide expressly that the buyer, on receiving
the property, shall test same within a specified time, and in case
it proves defective will notify the seller in order to give him an
opportunity to remedy the defect. It has been uniformly held
that contracts of this sort are lawful and must be enforced as they
have been made by the parties, and the test must be made within
the time specified, and notice given according to the terms of the
agreement. 2 Mechem on Sales, § 1384. Where the contract
of warranty provides that the notice of defects must be given
within a specified time, the condition is imperative; and if the
buyer does not show a fair compliance with the terms of the
contract in this regard on his part, he will not be permitted to
enforce it against the seller. It has been well settled that where
a purchaser of machinery has agreed that if it proves defective
he will give notice thereof to the seller within a specified time,
he will not be entitled to resist payment of the purchase money
on account of imperfection of which he did not give notice.
2 Mechem on Sales, § 1396; Benjamin on Sales, § 703; 35 Cyc.
430; *Miller* v. *Nichols,* 5 Neb. 478; *Frick & Co.* v. *Morgan &
Co.,* 69 S. W. 1072; *Case Threshing Machine Co.* v. *Lyon,* 72 S.
W. 356; *Nichols* v. *Knowles,* 31 Mich. 489; *Nichols* v. *Larkin,*
79 Mo. 464; *Beasley* v. *Huyett,* 92 Ga. 273.

Now, the testimony in this case most favorable to the appel-
lee tended to prove that immediately on receipt of the machinery
it set the same up and began operation thereof, and that it would
not work. The appellee thus knew, immediately after it had
begun the test of the machinery, that for some reason it would
not do good work. It continued thereafter to use and operate

the machinery for four and one-half or five months, during all
of which time, it contends, it did not do good work. According
to the undisputed testimony in the case, the appellee never did
give notice to the appellant that the machinery did not do good
work or that it was defective in any way after it began the opera-
tion thereof. Under the express terms of the above warranty,
it was incumbent upon appellee to give written notice to the
appellant that the machinery did not prove as represented or did
not do good work. This notice, we think, under the terms of
the agreement, was a condition to be observed and performed by
the appellee before it could be entitled to insist that there had
been a breach of the warranty by the appellant. It is urged by
the appellee, however, that when, upon receipt of the machinery,
it found that certain items thereof were broken, it at once notified
the appellant in said letter of January 4, and requested that
the same be corrected, which appellant failed to do; it contends
that thereby the appellant breached the contract and all the war-
ranties therein contained, and, on that account, it did not send to
it notice that the machinery would not do good work. But, as
we have before shown, it was not, under the terms of this con-
tract, incumbent upon the appellant to send said items of the
property without pay, and it did not breach any portion of the
contract in failing so to do. Nor do we think that the failure
on the part of appellant to send said items, even if under the
contract it was required to do so, would constitute a sufficient
excuse for the failure on the part of appellee to notify appellant
that the machinery did not do good work under the 30-day test,
for the reason that it was not sufficiently material to cause a
waiver of the performance of that condition on the part of appel-
lee. But appellee further urges that the cause of the machinery
not working was due to a defect in the mandrel, and that it did
not discover this specific defect until four and one-half or five
months after it had operated the machinery, and that for this
reason it was not required to give the notice. But, under the
testimony in the case most favorable to appellee, it discovered
immediately upon beginning the operation of the machinery that
from some cause it did not do proper work, and the contract did
not specify, nor do we think that it contemplated, that the appellee
should have first learned the specific defect before it should give .

notice that the machinery was not doing proper work. The contract itself stated that one of the objects in giving this written notice to the appellant was to give to it an opportunity to send one of its men to remedy the defect. From this it would appear that it was contemplated that the appellant and its employees understood the character of this machinery and were best able to discover what defect there might be in it, if any, and correct it. We think that the provisions of this warranty plainly show that it was the intention of the parties that the appellee should have 30 days in which to test the machinery, and, upon discovering that it would not do good work, whether it knew the cause thereof or not, it would give immediate notice of that fact to the appellant. Before it can be said that the appellant breached this express warranty of the contract, the appellee must first have shown that it gave notice to it as provided thereby. This it did not do. It follows, therefore, that the appellant did not breach the contract of warranty made by it, and that the appellee was not entitled to recover any damages based on that ground.

The finding and judgment made by the lower court was, therefore, contrary to the undisputed evidence adduced upon the trial of this cause. The judgment is reversed, and this cause is remanded for a new trial.