## FRIGORIFICO WILSON DE LA ARGENTINA v. WEIRTON STEEL CO.

### No. 3319.

Circuit Court of Appeals, Fourth Circuit.

Jan. 10, 1933.

William R. Brown, of Chicago, Ill. (J. J. P. O'Brien and P. D. Morris, both of Wheeling, W. Va., and Thomas Freeman, of Chicago, Ill., on the brief), for appellant.

Charles McCamic, of Wheeling, W. Va. (Thorp, Bostwick, Stewart & Reed, of Pittsburgh, Pa., McCamic & Clarke, of Wheeling, W. Va., and W. D. Stewart, of Pittsburgh, Pa., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

A demurrer to a declaration in assumpsit for breach of a written contract, which by stipulation was made a part of each of the five counts of the declaration, was sustained by the District Court. The contract was an agreement of sale, in which a West Virginia manufacturer of prime coke tin plate agreed to sell to a packer of meat and food products, 50,000 base boxes of such tin plate, at a designated price, to be shipped during the year 1918, according to specifications to be furnished by the buyer, in approximately equal monthly quantities. Each month's quota, it was expressly agreed, constituted a separate and independent contract. The contract contained the following paragraph: "Claims: Claims for errors, shortages, imperfections, deficiencies, etc., will not be entertained by seller unless made within thirty days after receipt of goods, and seller shall not in any event be liable for labor charges or consequential damages arising from the use of defective material. In case any shipment of material proves unsuitable, it is understood that the buyer will immediately discontinue its use and advise the seller of the facts, that the seller may have the opportunity of deciding what shall be done in the circumstances, so that possible loss or damage to either party shall be prevented or minimized."

The declaration charges that certain quantities of prime coke tin plate were ordered by the buyer under the contract in the spring of 1918, and additional quantities in July of that year, to be shipped to Argentina, to be used in the manufacture of cans for the packing of meat and food products; and pursuant to the order, the goods were delivered by the seller to the buyer, packed in boxes for shipment, and were transported at the expense of the buyer, amounting to $30,130.25

for the freight, insurance, and customs charges on the two shipments; and the buyers also paid the purchase price upon delivery, in the sum of $100,083.40. After the goods arrived at Argentina, the buyer used them in the manufacture of cans for packing, and in the process ascertained that a large part of the material was brittle and wholly unfit for such purposes. The unfitness was not discoverable by inspection or tests, and was ascertained only as each sheet of tin plate was used in the process of manufacture. By reason of the defects, the buyer lost the sum of $28,-780.92, consisting of an expense of $5,000 in the manufacture of the defective goods, $5,-332.62 for the freight, insurance, and customs charges thereon, and $18,447.30 for the purchase price. The declaration makes a claim for damages in this amount.

It is alleged in the declaration that the buyer was a corporation of the Republic of Argentina, engaged in the business of slaughtering live stock and packing meat and meat products in cans at Buenos Aires, and that the seller was a West Virginia corporation, engaged in the manufacture for sale of prime coke tin plate to be used in the manufacture of cans for the packing of such products, and that at the time of the agreement and of the manufacture of the tin plate, and of the deliveries to the buyer, the seller knew that the tin plate was purchased and intended to be used by the buyer at its plant in Argentina in the manufacture of cans for the packing of meat and food products, and then and there promised and warranted that the tin plate would be fit for the use in the manufacture of such cans. The contract, however, does not show that any such promise or warranty was expressly made by the seller, and we must therefore construe the declaration as if this allegation had been omitted. Where inconsistencies of this kind occur, it is obvious that the terms of the contract must prevail over the general allegations of the declaration, for the rule ordinarily is that a pleading must be taken in the sense most unfavorable to the pleader, and by no reasonable construction can it be held that the parties were not bound by the terms of the document which they had signed. We have then a contract of sale of goods in which a certain known, described, and definite article was purchased without express warranty. The defendant argues that under such circumstances no implied warranty of fitness arises, and that the buyer cannot complain if the article purchased proved unsuitable for the purposes to which it was put.

The general rule is laid down in Seitz v. Brewers', etc., 141 U. S. 510, 12 S. Ct. 46, 35 L. Ed. 837, and the decision of this court in Baer Groc. Co. v. Barber Milling Co., 223 F. 969, 972. In the last-mentioned case suit was brought for the sale of a certain described brand of flour, and the defense was that it did not prove satisfactory to the buyer's customers. Judge Waddill, speaking for the court, said: "The case falls within the class of the purchase of described, known, and definite articles, from a manufacturer, with knowledge of the purpose for which the purchase was made; and if the known, described, and defined thing be actually furnished, *and the same is of merchantable character*, there is no warranty that it will answer the particular purpose intended by the buyer; and under such circumstances, clearly in the absence of express warranty or fraud, no liability would attach to the seller for the failure of the article supplied to meet the requirements of the defendant's customers— that is, either what sellers of the brand desired, or customers demanded." (Italics inserted.)

See, also, Appalachian Power Co. v. Tate, 90 W. Va. 428, 111 S. E. 150.

It is to be noted, however, that the rule is qualified by the condition that the article furnished must be of merchantable character. There is always an implied warranty in a sale of goods by a manufacturer that they are reasonably fit for the general purpose for which they are manufactured and sold. In Hood v. Bloch, 29 W. Va. 244, 11 S. E. 910, 913, the court said: " 'Where a manufacturer undertakes to supply goods manufactured by himself, or in which he deals, but which the vendee has not had the opportunity of inspecting, it is an implied term in the contract that he shall supply a merchantable article.' Gardiner v. Gray, 4 Camp. 144; Laing v. Fidgeon, 4 Camp. 169; Shepherd v. Pybus, 3 Man. & G. 868."

This warranty is implied even when goods of a known and described character are purchased; and sometimes it has the same effect as a warranty of fitness for a particular purpose. See Williston on Sales, § 235; American Tank Co. v. Revert Oil Co., 108 Kan. 690, 196 P. 1111. Williston says: "It should be noticed also that the fitness for a particular purpose may be merely the equivalent of merchantability. Thus the particular purpose for which a reaping machine is generally designed is reaping. If it will not fulfill this purpose it is not merchantable. The particular purpose, however, may be narrower;

a reaping machine may be desired for operation on rough ground and, though it may be a good reaping machine, it may yet be impossible to make it work satisfactorily in the place where the buyer wishes to use it. The principle already laid down that a manufacturer impliedly warrants his goods to be merchantable includes, therefore, the doctrine sometimes stated in this way—that the manufacturer of goods impliedly warrants that they are reasonably fit for the general purpose for which they are manufactured or sold."

■ It is obvious, in this case, that if full scope is given to this rule, the allegations of the declaration indicate a breach of the implied warranty of merchantability. The definite allegation, that the defendant was engaged in the production and manufacture of prime coke tin plate "to be used in the manufacture of cans in which to pack meat or meat food products," must be taken to mean that the manufactured article was usable in the manufacture of cans for packing food products, and if the material delivered was not suitable for this purpose it was obviously not merchantable. There is no inconsistency between the allegation of the declaration and the terms of the contract in this respect. The latter described the material purchased by the name known to the trade. The former contained the allegation that goods of this description are designed to be used in the making of packer's cans.

■ In another respect, however, we think that the declaration is defective. It fails to show, as required by the paragraph on claims quoted above, that the buyer, when the material proved unsuitable for use, immediately discontinued the manufacture of the cans and advised the seller of the facts so that the seller might have the opportunity to decide what should be done in the circumstances to prevent or minimize possible loss or damage. There is nothing in the pleading to excuse the nonperformance of this obligation. Williston on Sales, § 611a, refers to the rule applicable in such cases, as follows: "Conditions are often imposed in contracts qualifying the buyer's remedies for breach of warranty, and such conditions are especially common where a right of rescission is stipulated for. If such conditions are imposed, of course, in order to entitle the buyer to the stipulated remedy, they must be observed. As for instance, that notice of defects shall be given to the seller and perhaps also that he shall have an opportunity to rectify them."

■ Ordinarily, when there is a breach of warranty, express or implied, in a contract of sale of personal property, the purchaser has a choice of remedies. He may retain the property and recover the difference between the value of that which was sold and that which was delivered, or he may return the property and recover the entire purchase price; but when, as here, the parties have modified the usual obligations by a stipulation as to what shall be done when a defect is discovered, a new element is introduced in the contract which must be observed. Since the buyer agreed that the seller was to have immediate notice of the unsuitability of material for use, and should thus be given an opportunity to decide what should be done to minimize the loss, the buyer cannot recover unless this duty imposed upon it was performed. Sloan v. Wolf Co. (C. C. A.) 124 F. 196; Stave & Timber Corp. v. A. H. Andrews Co. (C. C. A.) 242 F. 230; South Atlantic P. & Pro. Co. v. York Mfg. Co. (C. C. A.) 276 F. 509; Tucker v. Traylor Eng. & Mfg. Co. (C. C. A.) 48 F.(2d) 783; Southern Eng. & Boiler Works v. Globe C. & L. Co., 98 Ark. 482, 136 S. W. 928; Northern E. M. Co. v. H. M. Benjamin C. Co., 116 Wis. 130, 92 N. W. 553; Los Angeles O. G. Ass'n v. Pacific Grocery Co., 119 Wash. 293, 205 P. 375; Forsythe v. Russell Co., 148 Ky. 490, 146 S. W. 1103. For these reasons, the declaration was defective in law, and the judgment of the District Court must be sustained. It may be, however, that the duty imposed upon the buyer in this respect was actually performed, and that reference to it in the declaration was omitted by oversight, and the case will therefore be remanded, and the plaintiff be given leave to amend the declaration if it sees fit to do so.

The declaration seems to need amendment in other particulars. The contract was signed by Weirton Steel Company, a West Virginia corporation (or Phillips Sheet & Tin Plate Company, as it was then called), as seller, and Wilson & Co., Inc., as buyer, and it contained the declaration that the former company agreed to sell, and the latter and its subsidiaries agreed to buy, the goods. Wilson & Co., Inc., however, is not a party to the suit. It was brought by Frigorifico Wilson de la Argentina, a corporation, one of the subsidiaries, as plaintiff, against the steel company, as defendant. From a consideration of the declaration taken by itself, it would appear that Frigorifico Wilson de la Argentina was a party to the contract; but it is clear that this is not the case. Some confusion has also crept into the declaration because the pleader has used the term "plain-

tiff" sometimes to refer to Frigorifico Wilson de la Argentina, and sometimes to Wilson & Co., Inc. These errors may also be corrected by amendment.

The seller contends that Frigorifico Wilson de la Argentina has no right of action in this case because it was not a party to the contract and because under the statute law of West Virginia, a third person for whose benefit a contract has been made, may not sue for breach thereof unless the contract was made for his sole benefit. Section 12 of article 8 of chapter 55 of the Code of West Virginia of 1931 provides: "If a covenant or promise be made for the sole benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain, in his own name, any action thereon which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise." This statute does not in our opinion prevent a recovery by Frigorifico Wilson de la Argentina, the subsidiary corporation, in this action, merely on the ground that the contract was made by the parent corporation for its own benefit, and that of a number of subsidiaries, because it was expressly provided in the instrument that each month's quota should be a separate and independent contract. The declaration states that two orders for goods were given; one in March or April, and one in July, 1918, in each case for goods to be shipped to the subsidiary at Argentina. If it shall appear from the declaration as finally amended that these orders were placed for the benefit of the subsidiary as contemplated in the contract, we see nothing in the West Virginia statute to prevent a suit in the name of the subsidiary for breach of contract.

The judgment of the District Court is affirmed, and the case is remanded for further proceedings in accordance with this opinion.

Affirmed.