**Robert P. DUCKWORTH, Plaintiff–Appellant,**

v.

**STATE ADMINISTRATION BOARD OF ELECTION LAWS; Board of Supervisors of Elections for Anne Arundel County; John Willis, In his official capacity as Secretary of State, Defendants–Appellees,**

and

**Nancy Kopp, In her official capacity as Secretary of State, Defendant.**

**No. 02–1936.**

United States Court of Appeals, Fourth Circuit.

Argued: May 8, 2003.

Decided: June 19, 2003.

---

**ARGUED:** John R. Greiber, Jr., Greiber & Scheibe, Glen Burnie, Maryland, for Appellant. Steven Marshall Sullivan, Assistant Attorney General, Baltimore, Maryland, for Appellees. **ON BRIEF:** Phillip F. Scheibe, Greiber & Scheibe, Glen Burnie, Maryland; Roy L. Mason, MASON, Ketterman & Cawood, P.A., Annapolis, Maryland, for Appellant. J. Joseph Curran, Jr., Attorney General of Maryland, Maureen M. Dove, Assistant Attorney General, Baltimore, Maryland; Robert A. Zarnoch, Assistant Attorney General, Kathryn M. Rowe, Assistant Attorney General, Annapolis, Maryland, for Appellees.

Before LUTTIG and MICHAEL, Circuit Judges, and GOODWIN, United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed by published opinion. Judge LUTTIG wrote the opinion, in which Judge MICHAEL and Judge GOODWIN joined.

## OPINION

LUTTIG, Circuit Judge:

This case presents the question of first impression before our court of whether a plaintiff can sustain his attack on the constitutionality of congressional district apportionment by alleging that the challenged districts are bizarrely drawn.

Appellant, Robert P. Duckworth, sued various Maryland agencies and officials, appellees, alleging that their enforcement of the state's 2002 congressional reapportionment statute, Laws of Maryland Chapter 340, violated the one man-one vote principle embodied within Article I, section 2 of the United States Constitution, the First Amendment and the Fourteenth Amendment, by apportioning Anne Arundel County voters into four different bizarrely-drawn congressional districts. The district court dismissed the case for failure to comply with Federal Rule of Civil Procedure 12(b)(6). On appeal, Duckworth does not challenge the dismissal of his Article I, section 2 and his First Amendment claims. He appeals only the district court's dismissal of his Fourteenth Amendment political gerrymandering claim. Having reviewed Duckworth's pleadings, we too conclude that he failed to state a valid claim, and so, for the reasons given below, we affirm the judgment of the district court.

### I.

The central pleadings within Duckworth's Fourteenth Amendment complaint are that the state's 2002 apportionment of Anne Arundel County voters into four different congressional districts "intentionally, arbitrarily and invidiously debases and dilutes the votes of the residents of Anne

Arundel County," First Amended Complaint, J.A. at 11, that the apportionment is "an illegal and intentional prearrangement of voters that ensures the election of Democratic candidates and thereby consistently degrades plaintiff's participation in and influence on the elective and political process as a whole," *id.* at 12, and that the challenged districts have "bizarre" shapes and are not contiguous. He argues that the bizarre appearance of the districts, and their alleged lack of contiguity, are proof of the state's districting manipulations, of the assured electoral victory of Democratic candidates, and of illegal repression of his political voice.

The district court rejected Duckworth's Fourteenth Amendment complaint, relying principally upon a 1991 decision by a three-judge district court in *Anne Arundel County Republican Central Comm. v. State Admin. Bd. of Election Laws,* 781 F.Supp. 394, 401 (D.Md.1991). In that case, Republican and Democratic committees from Anne Arundel County challenged the prior congressional apportionment, similarly claiming that the apportionment of county residents into four separate, bizarrely-drawn districts diluted the political voice of county residents. The three-judge court, after trial and consideration of proof, rejected the plaintiffs' claims, and the Supreme Court summarily affirmed. 504 U.S. 938, 112 S.Ct. 2269, 119 L.Ed.2d 197 (1992).

The district court concluded that since Duckworth's complaint did not differ materially from the *Anne Arundel County Republican Central Comm.* complaint,[1] and since it alleged no particular changed circumstances between the prior apportionment and the new, the complaint failed to state a claim. *See* District Court's Memorandum Opinion, J.A. at 113 ("As Duck-

worth fails to allude to any facts that suggest his claims are based on any particular provision in the 2002 plan, he cannot argue now that his claims hinge on a distinction between the plan at issue in the 1991 case and [Chapter 340]."). The district court reinforced its conclusion that Duckworth had not pled facts sufficient to state a claim by examining the facts at issue in *Anne Arundel County Republican Central Comm.* and demonstrating that Duckworth failed to allege certain equivalent facts here. *See* J.A. at 114-15.

Having concluded that Duckworth's complaint stated no claim, the court reasoned that the questions presented by the pleadings were insubstantial. As a result, the court did not forward Duckworth's complaint to a three-judge court, as provided for by 28 U.S.C. § 2284(a) (providing that a district court of three judges be convened to hear cases challenging congressional districting as unconstitutional), and instead dismissed the case itself on the authority of this court's precedent in *Simkins v. Gressette,* 631 F.2d 287, 295 (4th Cir.1980) (noting that convening a three-judge court is not required to address insubstantial claims).

Duckworth now appeals from that dismissal.

## II.

We review *de novo* the district court's grant of a motion to dismiss under Rule 12(b)(6), inquiring solely whether Duckworth's pleadings adequately state a set of facts, which, if proven to be true, would entitle Duckworth to judicial relief. *See Chisolm v. TranSouth Financial Corp.,* 95 F.3d 331, 334 (4th Cir.1996). If, as the district court concluded, Duckworth's pleadings do not state a claim, then by

---

1. Indeed, thirty-seven of Duckworth's forty complaining paragraphs were copied verba- tim from the 1991 complaint into the complaint at issue here.

definition they are insubstantial and so properly are subject to dismissal by the district court without convening a three-judge court. *See Simkins*, 631 F.2d at 295.

## A.

■ The district court's conclusion that Duckworth failed to state a claim rested on errant reasoning, and so we do not rely on it in affirming that court's judgment. While the district court rightly noted that Duckworth's pleading omitted certain facts pled in *Anne Arundel County Republican Central Comm.* (in particular the court noted the absence here of allegations as to the lack of political success by county Republicans) and that the omitted facts represented elements of the claim, the court improperly evaluated whether the facts Duckworth *did* plead satisfied the elements the omitted facts might have otherwise satisfied and thus sufficed to state a claim on their own.

The district court rejected the adequacy of the facts Duckworth did plead via a two-step analysis. First, the court concluded that Duckworth alleged no changed circumstances from the prior suit, *Anne Arundel County Republican Central Comm.* And then on that basis the court reasoned that the prior decision required the conclusion that Duckworth's claims were not well stated. In reaching this conclusion the court did not assert principles of *res judicata* or *collateral estoppel,* but instead relied on the precedential value of the earlier case.

Two points make evident the lower court's error in its analysis. First, though the court concluded that Duckworth pled no new changes in the districting, he did in fact plead changes. Because Duckworth's claim involves a *different* apportionment plan than was involved in *Anne Arundel County Republican Central Comm.,* the

maps of the districts that were and are alleged to be unconstitutionally drawn differ. And, since part of Duckworth's claim is that the districts' general appearance is "bizarre," and that that bizarreness evinces unconstitutional political gerrymandering, the pleading of the new districts' general appearance, though utilizing verbatim recitations, necessarily differs from the prior districts' general appearance pleading.

Secondly, the 1991 case on which the district court relied was decided *on the merits* after full review of the facts. *See Anne Arundel County Republican Central Comm.,* 781 F.Supp. at 394–95. Thus, that court did not conclude as a matter of law that the pleadings were inadequate to state a claim. Indeed it implied the opposite, proceeding to trial and concluding that the proffered facts did not prove the (presumably well pled) claim.

The district court was therefore both presented with new allegations as to general appearance and with a decision from *Anne Arundel County Republican Central Comm.* that at least implied that pleadings as to general appearance might state a valid political gerrymandering claim on their own. In light of these circumstances, the lower court's conclusion that Duckworth's claims were foreclosed by precedent was in error.

## B.

### 1.

Notwithstanding the district court's analytical error, we nonetheless conclude that its judgment of dismissal was proper. This is so because none of Duckworth's allegations, including his general appearance pleadings, are adequate to prove an unconstitutional political gerrymander, as that claim has been defined by the Supreme Court.

The Supreme Court established that political gerrymandering claims are justiciable in federal courts in *Davis v. Bandemer*, 478 U.S. 109, 119–27, 106 S.Ct. 2797, 92 L.Ed.2d 85 (1986). There, importantly, the Court also gave clear definition to what is otherwise, by virtue of its widespread use in common parlance, a somewhat confusing term subject to different understandings: the political gerrymander.

First, the Court made clear that a "political gerrymander" refers not just to line-drawing (*i.e.*, the drawing of election district lines in a fashion intended to achieve certain advantageous political effect) but also refers to other political action that affects electoral processes so as to advantage some citizens over others. Thus, the Court referred to all the complained of conduct that was before it as "political gerrymandering," even though that conduct included both claims that "the particular district lines were drawn [in an unconstitutional fashion] and [that] the mix of single-member and multimember districts were intended to and did violate their [constitutional] rights." *Id.* at 115, 106 S.Ct. 2797.

■ Secondly, by articulating specific elements required to be proven in order to prevail on a political gerrymandering suit, *Davis* made clear that not all political gerrymandering is unconstitutional. Rather, the Court explained, "political gerrymandering" of the unconstitutional sort is conduct possessed of two particular characteristics: (1) intentional discrimination against an identifiable group; and (2) actual discriminatory effect on that group (*i.e.*, denial of that group's chance to influence

the political process effectively). *See id.* at 127, 106 S.Ct. 2797 (White, J., plurality opinion) (citing *Mobile v. Bolden*, 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980)).[2]

That a political gerrymander might be either constitutional or unconstitutional is a critical insight with respect to cases challenging political gerrymanders, for it relieves courts from having to pretend that a legislature has not engaged in political gerrymandering when it is obvious that the legislature has in fact gerrymandered its districts, but in a constitutionally permissible fashion. *See, e.g., Davis*, 478 U.S. at 138, 106 S.Ct. 2797 (White, J., plurality opinion). Thus, when a plaintiff fails to proffer sufficient evidence to satisfy *Davis* ' elements, the resulting conclusion is not that no political gerrymander exists, but that any gerrymander that did occur was constitutional. Because judicial honesty is as important to the law as analytical rigor, distinguishing between constitutional and unconstitutional political gerrymanders in this way adds valuable candor to judicial consideration of claims such as these.

■ As a consequence of the Court's holding in *Davis*, no plaintiff alleging an unconstitutional political gerrymander can survive a motion to dismiss, such as that Duckworth faces, by simply alleging that political gerrymandering has occurred. Rather, he must plead facts adequate to prove *Davis* ' two required elements: that there has been intentional discrimination against an identifiable group and an actual discriminatory effect on that group.

Simple, formulaic restatements of *Davis* ' two required elements cannot sus-

---

2. Though this two-element standard was articulated by the plurality opinion of Justice White, it constitutes a holding of the Supreme Court because it was endorsed by Justice Powell's opinion, joined also by Justice Stevens, concurring in part and dissenting in part, 478 U.S. at 161, 106 S.Ct. 2797, thus providing the standard with the votes of six Justices of the Court.

tain a suit alleging unconstitutional political gerrymandering. Just as in the antitrust context we have said that "the pleader must provide, whenever possible, some details of the time, place, and alleged effect of the conspiracy[,]" *Estate Const. Co. v. Miller & Smith Holding Co.,* 14 F.3d 213, 221 (4th Cir.1994), so too here must Duckworth do more than merely offer conclusory charges that there has been intentional discrimination against an identifiable group and that that group has suffered discriminatory effect under Chapter 340.

2.

We conclude that the district court's judgment of dismissal was proper because none of Duckworth's allegations, including his general appearance pleadings, adequately state the second element of a political gerrymandering claim under *Davis*— actual discriminatory effect. Since Duckworth has not sufficiently pled this more onerous second element, we do not reach the adequacy of his pleadings as to the first.

Duckworth's pleadings contain principally two types of allegations of discriminatory effect: (1) conclusory statements that the necessary discriminatory effect exists; and (2) factual allegations that the challenged districts have a bizarre appearance. For example, emblematic of his conclusory statements, Duckworth complains that Chapter 340 "fails to recognize the right of an individual, political group or association to effectively influence and participate in the political process[.]" J.A. at 11. And, emblematic of his general appearance allegations, he complains that Chapter 340 creates districts that "are laboriously and elaborately twisted, elongated and contrived to [ ] an extreme and excessive degree[.]" J.A. at 18.

■ The first category of his allegations, by virtue of their conclusory nature, are insufficient to state a claim for relief. *See Estate Const. Co.,* 14 F.3d at 220–221. Duckworth's many and varied assertions, made without causal reasoning, that Chapter 340 dilutes political voice and causes discriminatory effects fall into this category.

■ The second category of Duckworth's pleadings—allegations that the districts have a bizarre appearance—are not probative as to the discriminatory effect that must be proven in political gerrymandering cases because no reasonable inference can be drawn from the fact of a bizarre appearance that supports the conclusion that districting has caused such effects. At most it may be fairly inferred from bizarreness that the apportionment was the result of intentional political action and resulted in political effect. But, of course, *political effect itself is an expected, and indeed intended, result of apportionment.* See *Gaffney v. Cummings,* 412 U.S. 735, 753, 93 S.Ct. 2321, 37 L.Ed.2d 298 (1973) ("The reality is that districting inevitably has and is intended to have substantial political consequences."). That bizarreness may establish political effect is therefore an unobjectionable, and in fact expected, conclusion. But to conclude that bizarreness may establish political discrimination requires a very different inference, for the fact that members of a majority have acted politically is not evidence that they have caused discriminatory effects, even if their actions are disfavored by the minority. *Cf. Davis,* 478 U.S. at 140, 106 S.Ct. 2797 (White, J., plurality opinion) (noting that the shape of a district may "support a finding that an intention to discriminate was present and that districts were drawn in accordance with that intention, but they do not show any actual disadvantage[.]").

Discriminatory political effects instead emanate from majority action that establishes political mechanics that preclude minority participation, to some degree, in the political process writ large. Bizarre looking congressional districts do not imply such action because, despite their strange appearance, all affected voters still have a congressional representative, cast equally weighted votes for that representative, and so enjoy true representation—the essence of participation in the political process. There is thus no rationale for inferring from a district's appearance that it has discriminatory political effects, as opposed to non-discriminatory political effects.

It may be objected to this reasoning that general appearance allegations are probative as to discriminatory effect in *racial* gerrymandering cases, and so should likewise be considered probative in the context of political gerrymandering cases. But the Supreme Court precedent establishing that such evidence is so probative in racial gerrymandering cases does not, by its own logic, extend to political gerrymandering cases.

In *Shaw v. Reno,* 509 U.S. 630, 644, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993), the Supreme Court instructed that courts could adjudge a district's general appearance "bizarre" in racial gerrymandering cases and from such bizarreness infer discriminatory *racial* effect. *See id.* ("Appellants contend that redistricting legislation that is so bizarre on its face that it is unexplainable on grounds other than race demands the same close scrutiny that we give other state laws that classify citizens by race. Our voting rights precedents support that conclusion."); *id.* at 647, 113 S.Ct. 2816 ("[R]eapportionment is one area in which appearances do matter. A reapportionment plan that includes in one district individuals who belong to the same race, but who are otherwise separated by

geographical and political boundaries, and who may have little in common with one another but the color of their skin, bears an uncomfortable resemblance to political apartheid. It reinforces the perception that members of the same racial group ... think alike[.]"). The Court based this conclusion on its prior racial discrimination cases dealing with voting rights, *see id.* at 644, 113 S.Ct. 2816, and in so doing, on the unique nature of race in American history and the particular barriers the Fourteenth Amendment erects against race discrimination. *See id.* at 657, 113 S.Ct. 2816.

Of critical importance to the case at hand, the Supreme Court's conclusion that bizarreness could be adjudged was not a conclusion that bizarreness could be adjudged simply as a matter of general appearance, but that it could be adjudged bizarre in the context of a racial gerrymandering claim if "on its face [ ] it is unexplainable on grounds other than race." 509 U.S. at 644, 113 S.Ct. 2816 (citation omitted). Like-wise, the Court concluded that one could infer discriminatory effect from *such* bizarreness in the context of a racial gerrymandering complaint because the segregation of voters by race reinforces "impermissible racial stereotypes," a discriminatory effect in and of itself. *See id.* at 647, 113 S.Ct. 2816 (citing *Holland v. Illinois,* 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990)). Since perpetuation of *political* stereotypes is not impermissible under the Fourteenth Amendment, there are no "impermissible Republican stereotypes" at work here, on which we could conclude that the logic of *Shaw* operates. Nor is bizarreness otherwise proffered as a measure of some kind of prohibited categorical accounting, as it was in *Shaw* where the fact of bizarreness was relied upon to establish impermissible racial accounting.

That the Court summarily affirmed the dismissal of a political gerrymandering action brought with regards to the *same* bizarre looking districts later at issue in *Shaw*'s racial gerrymandering action only further makes the point that the Court's conclusions about appearance allegations in racial gerrymandering cases do not carry over to political gerrymandering cases. *See id.* at 636, 113 S.Ct. 2816. As a consequence, we face no precedential dictate to accept general appearance evidence as probative of discriminatory political effect, and our conclusion that such evidence is not so probative stands.[3]

■■■ Duckworth's complaint does also allege that the challenged districts are not contiguous, and that the apportionment plan violates the Constitution by virtue of this lack of contiguity. But contiguity presents a matter of readily discernible fact. A district either is, or is not, contiguous.[4] And though Duckworth's complaint repeatedly asserts that the challenged districts are not "contiguous," his pleadings contain maps that demonstrate the opposite: that the districts are contiguous. There can be no doubt that the districts are, as one of the articles Duckworth attaches as an exhibit to his complaint states, "just barely contiguous," J.A. at 45. But since his proffered exhibits make clear that the districts are contiguous in fact, his allegations that they are not contiguous are simply conclusory, and thus insuffi-

cient to support his action. *See Frigorifico Wilson de la Argentina v. Weirton Steel Co.*, 62 F.2d 677, 679 (4th Cir.1933) (deciding that because "[t]he contract [attached as an exhibit to the complaint] does not show that [the alleged] promise or warranty was expressly made by the seller, [ ] we must construe the declaration as if this allegation had been omitted.").

Duckworth's complaint, devoid of pleadings that allege facts sufficient to prove actual discriminatory effect, cannot survive the demands of Rule 12(b)(6). And, having failed to state a claim at all, Duckworth also failed to present a substantial question. Thus, the district court was justified in acting on the case itself and refraining from referring it to a three-judge district court. *See Simkins*, 631 F.2d at 290 ("If it appears to the single district judge that the complaint does not state a substantial claim for injunctive relief, he need not request the convening of a three-judge court." (citing *Maryland Citizens for a Representative General Assembly v. Governor of Maryland*, 429 F.2d 606 (4th Cir. 1970))). As a consequence, the district court's judgment of dismissal in this matter was proper.

## C.

■■■ At oral argument, Duckworth complained to the court that if complaints such as his are deemed inadequately pled then no challenge to political gerrymandering

---

**3.** Though *Shaw*'s holding, necessarily implying that bizarreness, a seemingly unmanageable judicial standard, can be adjudged by courts, forecloses the conclusion that general appearance evidence is not probative *because* no manageable judicial standard exists by which to determine whether a district looks "bizarre" *vel non,* that such evidence is, for other reasons, not probative of discriminatory political effect results in the advantageous result that we do not have to adopt such an unwieldy standard and so invite courts to

wade into political waters for which they are ill-suited.

**4.** Contiguous in this context means that the districts are composed only of contiguous neighborhood blocks ("blocks" being the smallest geographic unit in the apportionment mapping process, which when assembled together create a district). Thus, in a contiguous district, one could travel from any one block in the district to any other block in the district without ever leaving the district.

could ever survive a motion to dismiss, functionally undercutting the Supreme Court's assurance in *Davis* that such cases will receive judicial review. We reject this contention. Review will be had where there is some allegation that political gerrymandering violates the Constitution, *as such violations are defined under Davis' two element standard.* But where no such allegation exists, and all that is present is a proffer that political gerrymandering has occurred, combined with conclusory allegations that that gerrymandering is unconstitutional, dismissal is proper.

. In order to understand fully the failings of Duckworth's pleadings, one need only contrast his allegations with the type of claims of discriminatory effect that have previously supported political gerrymandering cases. For instance, claims that a state employs some electoral *mechanism* that dilutes political representation have received our review. Thus, in *Republican Party of North Carolina v. Martin,* 980 F.2d 943 (4th Cir.1993), we reviewed a claim that a state's judicial election mechanisms deprived the minority party of a voice in selecting assertedly "representative" judges. In that case, representativeness was claimed to be denied because the representatively-elected *district* judges were elected solely by *state-wide* election, thus ensuring that only the state-wide majority voice would be heard amongst this group of representatively-elected judges.

Such gerrymanders to the electoral process are not unfamiliar. Many have been presented for review to the Supreme Court in the context of racial gerrymandering allegations. *See, e.g., Rogers v. Lodge,* 458 U.S. 613, 102 S.Ct. 3272, 73 L.Ed.2d 1012 (1982) (involving a challenge in a racial gerrymandering case to the mechanics of an at-large voting system for a county council, which system allows a majority group to elect all the representa-

tives); *White v. Regester,* 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973) (involving a challenge in a racial gerrymandering case to state districting where the state legislature provided for some districts in the state house to be single-member districts and others to be multi-member districts); *Gomillion v. Lightfoot,* 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960) (involving a challenge to state legislation that *altogether* removed almost every black resident from the relevant political unit). These gerrymanders are of suspect nature, as contrasted with gerrymandering like that here, because the operation of such electoral mechanics, by the force of their own logic, reveals discriminatory effect (*e.g.,* such as where the election of local "representatives" by state majority vote ensures that only the majority voice is heard in the "representative" body).

So too, though we do not have occasion to address the question here, might a plaintiff be able to offer probative evidence of discriminatory political effect in a political gerrymandering case by way of a non-contiguity complaint. The Supreme Court has said that contiguousness represents one of the principles of apportionment, along with compactness and respect for political subdivisions. *See Shaw v. Reno,* 509 U.S. 630, 647, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993). But, the Court has also said that "these criteria are important not because they are constitutionally required—*they are not,* but because they are objective factors that may serve to *defeat* a claim that a district has been gerrymandered[.]" *Id.* at 647, 113 S.Ct. 2816 (emphasis added). Thus, the Court, though noting that these factors—as *principles* of apportionment—represent valid state interests in apportionment, has never said that *lack* of such factors could be probative of discriminatory political effect. We do not need to reach any resolution of this issue since Duckworth's pleadings cannot

establish that the challenged districts are not contiguous.

Duckworth's complaint, pointing to no electoral mechanism that, by force of its own logic, dilutes political voice and precludes his participation in the political process, and stating no sufficient claim of non-contiguity, contrasts with the types of complaints that might set out a valid complaint under the terms of *Davis* ' two element standard. Ultimately, he complains simply that more Democrats than Republicans live in his district, and thus that Republican candidates are bound to lose. This outcome is not evidence of discriminatory effect. To the contrary, it is the embodiment of democratic representation: the majority of people selecting their choice of representative.

## *CONCLUSION*

For the reasons stated herein, we affirm the judgment of the district court.

*AFFIRMED.*